**Eleanor CAPOGROSSO, Appellant**

**v.**

**THE SUPREME COURT OF The State of NEW JERSEY; Stuart Rabner (Intended to Be The Chief Judge of The Supreme Court of New Jersey); Advisory Committee On Judicial Conduct; Candace Moody (Intended to be The Disciplinary Counsel for The Advisory Committee on Judicial Conduct); John Tonelli (Intended to be The Di-**

rector of The Advisory Committee on Judicial Conduct); Hon. Maurice J. Gallipoli, J.S.C.; Hon. Peter F. Bariso, J.S.C.; Hon. Barbara A. Curran, J.S.C.; Hon. Mahlon L. Fast, J.S.C.

No. 08–3816.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 1, 2009.

Filed Nov. 27, 2009.

Eleanor Capogrosso, New York, NY, pro se.

V. Nicole Langfitt, Esq., Office of Attorney General of New Jersey, Matthew S. Sapienza, Esq., Office of Attorney General

of New Jersey Department of Law And Public Safety Richard J. Hughes Complex, Trenton, NJ, for The Supreme Court of The State of New Jersey; Stuart Rabner (Intended to Be The Chief Judge of The Supreme Court of New Jersey); Advisory Committee On Judicial Conduct; Candace Moody (Intended to be The Disciplinary Counsel for The Advisory Committee on Judicial Conduct); John Tonelli (Intended to be The Director of The Advisory Committee on Judicial Conduct); Hon. Maurice J. Gallipoli, J.S.C.; Hon. Peter F. Bariso, J.S.C.; Hon. Barbara A. Curran, J.S.C.; Hon. Mahlon L. Fast, J.S.C.

Before: RENDELL, FUENTES and ALDISERT, Circuit Judges.

## OPINION

### PER CURIAM.

*Pro se* appellant Eleanor Capogrosso, an attorney, filed a civil rights action against, *inter alia,* four New Jersey Superior Court judges, the New Jersey Advisory Committee on Judicial Conduct ("ACJC"), ACJC Disciplinary Counsel Candace Moody, and ACJC Director John Tonelli. Her claims stemmed from alleged judicial misconduct in her state court cases and alleged misconduct on the part of the ACJC, which is charged under the New Jersey Rules of Court with investigating claims of judicial misconduct. Capogrosso appeals from the District Court decision dismissing her 42 U.S.C. § 1983 complaint under Federal Rule of Civil Procedure 12(b)(6). We have jurisdiction pursuant to 28 U.S.C. § 1291.

### I

Since around 2001, Capogrosso has been involved as a litigant in various state court lawsuits related to tenancy disputes. During the course of these cases, Capogrosso appeared before Superior Court Judges Gallipoli, Fast, Curran, and Bariso. At some point in each case, the judges' judicial conduct appeared to Capogrosso as criminal or violative of her rights as a litigant. Following each incident, she filed a complaint with the ACJC. The ACJC dismissed all five complaints.

In November 2007, Capogrosso filed a 21–claim complaint in the District Court. Five of those claims alleged that the Superior Court judges' conduct on the bench amounted to criminal behavior. Capogrosso also raised claims, citing both the Fourteenth Amendment and 42 U.S.C. § 1983, that the ACJC violated her rights by dismissing her complaints against the judges. Based on these alleged violations, Capogrosso raised five claims for costs and attorney's fees. Further, Capogrosso claimed that New Jersey Court Rule 2:15, which established the ACJC, violates the New Jersey Constitution.

Capogrosso also alleged that, during the pendency of her federal case, another incident involving Judge Fast occurred. While in Superior Court, Capogrosso was waiting with her attorney outside of Judge Fast's chambers. Judge Fast exited his chambers, saw Capogrosso with her attorney, and entered the chambers of Superior Court Judge Iglesias, before whom Capogrosso was about to appear as a litigant. When she appeared before Judge Iglesias, he denied a motion her attorney had filed, although her lawyer commented to her that such motions were routinely granted. Capogrosso amended her federal complaint to allege that Judge Iglesias' surprising ruling, viewed in light of his interaction with Judge Fast before Capogrosso's court appearance, gave rise to an inference of improper influence, in violation of her due process rights.

The Defendant–Appellees filed a Rule 12(b)(6) motion to dismiss, which the Dis-

trict Court granted. Capogrosso's motion for reconsideration was denied and she filed a timely notice of appeal.[1]

## II

■ We exercise plenary review over the District Court order granting the Rule 12(b)(6) motion. *See McGovern v. Philadelphia*, 554 F.3d 114, 115 (3d Cir.2009). "We accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in [Capogrosso's] favor." *Id.* "The District Court's judgment is proper only if, accepting all factual allegations as true and construing the complaint in the light most favorable to [Capogrosso], we determine that [she] is not entitled to relief under any reasonable reading of the complaint." *Id.*

■ The District Court dismissed Capogrosso's criminal claims against the Superior Court judges under the doctrine of judicial immunity. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir.2006). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). Here, the District Court reasoned that all of the allegations against Judges Gallipoli, Bariso, Fast, and Curran related to actions they took as judges. We agree and note that despite her unsupported assertions to the contrary, Capogrosso has not set forth any facts that would show that any of the judges acted in the absence of jurisdiction. Likewise, the District Court correctly noted that Capogrosso's criminal claims fail to state a cause of action under § 1983, as individual citizens do not have a constitutional right to the prosecution of alleged criminals. *See Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir.1988).

■■ We also agree that Capogrosso failed to state a § 1983 claim for Judge Fast's alleged improper influence. The Federal Rules of Civil Procedure require that a plaintiff assert more than mere labels and conclusions. *See* Fed.R.Civ.P. 8; *Phillips v. County of Allegheny*, 515 F.3d 224, 231–32 (3d Cir.2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, a "judicial conspiracy" claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal. *See Crabtree v. Muchmore*, 904 F.2d 1475, 1480–81 (10th Cir. 1990). To wit:

> The Court is mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances. The Court is equally mindful that caution is advised in any pre-

---

1. In her notice of appeal, Capogrosso states that she appeals all unfavorable orders related to the dismissal of her complaint. Because Capogrosso is an experienced litigant, we limit our consideration to the arguments raised in her appellate brief. Nevertheless, we remain mindful of our obligation to construe a *pro se* litigant's pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

trial disposition of conspiracy allegations in civil rights actions.

However, the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action. A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.

*Id.* at 1481 (internal citations and quotation marks omitted). Here, Capogrosso alleged only that Judge Fast interacted with Judge Iglesias after presumably hearing her discuss her case in a hallway, and that Judge Iglesias' subsequent adverse ruling gives rise to an inference of conspiratorial conduct. The District Court reasoned that, without more, Capogrosso failed to state a cognizable claim under § 1983. We agree.

### III

■ We turn next to Capogrosso's claims against the ACJC, Disciplinary Counsel Moody, and Director Tonelli (collectively, "ACJC").[2] At the outset, we note our agreement with the District Court's analysis concerning the overlap between Capogrosso's § 1983 claims against ACJC and her identical Fourteenth Amendment claims. Inasmuch as § 1983 affords a remedy for infringement of one's constitutional rights, identical claims raised under the Fourteenth Amendment are redundant, rendering the outcome of the § 1983 claims dispositive of the independent constitutional claims. *See Rogin*

*v. Bensalem Twp.,* 616 F.2d 680, 686–87 (3d Cir.1980).

■ In dismissing Capogrosso's claims against the ACJC, the District Court reasoned that the entity and its employees are entitled to Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court, regardless of the relief sought. *See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania,* 271 F.3d 491, 503 (3d Cir.2001). This immunity does not extend to individual state officers sued in their individual capacities for prospective injunctive or declaratory relief to remedy ongoing violations of federal law. *See id.* Inasmuch as Capogrosso sought relief against the ACJC and its employees only in their official capacities, dismissal of her claims was appropriate. *See Hirsh v. Justices of Sup. Ct. of California,* 67 F.3d 708, 715 (9th Cir.1995). To the extent that Capogrosso's *pro se* complaint can be read to include claims against Director Tonelli and Disciplinary Counsel Moody in their individual capacities, they are entitled to quasi-judicial immunity and thus not subject to suit for injunctive relief. *See id.* Thus we agree with the District Court's dismissal of Capogrosso's § 1983 and Fourteenth Amendment claims. Accordingly, the District Court properly dismissed Capogrosso's five claims for attorney's fees and costs based on the alleged constitutional violations.

### IV

■ Lastly, we address Capogrosso's claim that New Jersey Court Rule 2:15 violates the New Jersey Constitution. In dismissing that claim, the District Court

---

**2.** Notably, Capogrosso sued Director Tonelli and Disciplinary Counsel Moody in their official capacities.

reasoned that Capogrosso failed to state a claim cognizable under § 1983, as that provision only provides remedies for a deprivation of a person's "rights, privileges or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983; *see Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir.1993) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).[3]  We agree.

██  The District Court further reasoned that even if Capogrosso had raised a claim under the United States Constitution, the claim would still be dismissed because her bare allegation that the ACJC's confidential procedures facilitate improper decisions failed for the same reason as her "judicial conspiracy" claim. That is, her mere labeling of the ACJC's practices as unconstitutional, without greater factual support, was insufficient to support a claim for relief under § 1983. Again, we agree.

Accordingly, and for the foregoing reasons, we will affirm the judgment of the District Court.  The Appellees' motion to file a supplemental appendix and to supplement the record is denied.  Appellant's motion for leave to file a supplemental appendix is denied.  Appellant's motion for leave to file a reply brief out of time and to file an overlength reply brief is granted. Appellant's motion for a protective order and for an expedited decision is denied. *See* Fed. R.App. P. 8(a); 3d Cir. L.A.R. 4.1.  Appellant's motion for oral argument is denied.

**3.**  Inasmuch as Capogrosso invoked the District Court's supplemental jurisdiction over a related state law claim, we understand the

District Court to have declined to exercise it. *See* 28 U.S.C. § 1367(c).